## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

UNITED STATES OF AMERICA

v.                                                      Case No. 3:08cr524

DARRELL UNDERWOOD and
CYNTHIA UNDERWOOD,

Defendants.

## MEMORANDUM OPINION

Before the Court is the Government's Motion to Revoke Bond and Amend Conditions of

Release. (Docket No. 28.) The Motion seeks revocation of Darrell Underwood's bond and

amendment of Cynthia Underwood's Conditions of Release, on the grounds that both Defendants

have violated the terms of the Restraining Orders and Conditions of Release governing their

pretrial release. The Court held a hearing on May 6, 2009, which was continued to May 20,

2009. The parties submitted proposed findings of fact and conclusions of law on May 21, 2009.

For the following reasons, the Court GRANTS the Government's Motion.

### I. Darrell Underwood's Terms of Bond

Defendants own a real estate investment and management company called Walkwood

Properties. Darrell Underwood was charged in a December 16, 2008 indictment alleging wire

fraud, mail fraud, bank fraud, and money laundering. On December 18, 2008, Darrell

Underwood appeared before the undersigned for an initial appearance and was released subject to

an Order Setting Conditions of Release. (Docket No. 7.) This Order included a condition that

Darrell Underwood "have no financial responsibility or contact with Walkwood Properties or the

business of Walkwood Properties." (Order Setting Conditions of Release 3.) Also on December

18, 2008, the Honorable James R. Spencer entered a Restraining Order enjoining Defendants from "transferring, selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of" Defendants' real and personal property without prior approval of the Court. (Restraining Order 1-2.) (Docket No. 5.) The Restraining Order expressly indicated that the scope of this prohibition extended to currency in Darrell Underwood's possession.

On April 24, 2009, Judge Spencer entered an Amended Restraining Order enjoining Defendants "from receiving any income related to Walkwood Properties, Inc., to include rental payments in the form of cash, check, money orders or any other form of payment." (Amended Restraining Order 3.) (Docket No. 27.) The April 24, 2009 Restraining Order directed Defendants "to notify affected tenants of impending foreclosure proceedings and to refrain from receiving any payments from such tenants." (Amended Restraining Order 3-4.)

## II. Cynthia Underwood's Terms of Bond

An oral order of the Court during Darrell Underwood's bond hearing on December 18, 2008, approved of an agreement between the United States and Defendants to permit Cynthia Underwood to continue operating Walkwood Properties, independent of any participation by Darrell Underwood. The purpose of this agreement was that tenants could remain living in Walkwood-managed properties during the Defendants' criminal proceedings with decreased risk of foreclosure. However, the evidence showed that three properties at issue in this Motion have gone into foreclosure, including 622 Mount Columbia Road, Manquin, Virginia; 2410 Parkview Avenue, Petersburg, Virginia; and 4037 Simons Drive, Richmond, Virginia.

Cynthia Underwood was indicted on ten charges as a co-defendant with Darrell Underwood in an April 8, 2009 Second Superceding Indictment. (Docket No. 18.) She appeared before the undersigned on April 23, 2009, for her initial appearance and bond hearing. The Court released Cynthia Underwood on a personal recognizance bond, subject to an Order Setting Conditions of Release that permitted her to continue operating Walkwood Properties but clearly required that she "maintain any income from rental properties or other source separate and apart and advise her attorney of such payments." (April 23, 2009 Order Setting Conditions of Release 3.) (Docket No. 23.) The evidence presented showed that she has not done so.

### III.  Findings of Fact

#### A.    622 Mount Columbia Road, Manquin, Virginia

Walkwood Properties manages a property at 622 Mount Columbia Road, which is titled to and occupied by C.J. The Court finds that Darrell Underwood violated his conditions of release by conducting Walkwood Properties business in relation to this property. The evidence showed that Darrell Underwood contacted lender GMAC Mortgage to inquire about the mortgage on the property in April 2009. (Gov't Ex. 3.) A cover sheet to a seven-page facsimile transmission indicated that Darrell Underwood contacted "Pat" at "Specialized Inc." regarding the property. (Gov't Ex. 4.) That fax advised "Pat" that his account was in default due to a pending federal case and the related seizure of his assets and bank accounts by the federal government. Darrell Underwood included a copy of the December 18, 2008 Restraining Order. The fax transmission line on the top of the fax cover sheet indicates that Darrell Underwood sent the fax on April 16, 2009, in clear violation of the Conditions of Release.

3

A letter sent from Specialized, Inc. to Walkwood on March 30, 2009, advised the

recipient that the property at 622 Mount Columbia Road had been noticed for a trustee's sale.

(Gov't Ex. 14.) Testimony at the May 6, 2009 hearing indicated that Darrell Underwood

retrieved this letter from Walkwood Properties' post office box and opened it, in violation of the

condition of the bond prohibiting him from conducting Walkwood Properties business.[1]  Indeed,

Darrell Underwood had the letter in his possession during the hearing itself, and turned it over to

the Court. (May 6, 2009 Hr'g Tr. 133:1-11.)  Additionally, the Government's witness indicated

that this letter, addressed to Walkwood Properties, constituted a notice of foreclosure, but that

Walkwood never advised the tenant (and apparent titleholder), C.J., that the property was going

into foreclosure–another violation of the April 24, 2009 Amended Restraining Order requiring

Defendants to notify affected tenants of impending foreclosure proceedings.  Finally, the United

States adduced evidence showing that C.J. paid $3000 in rent, and the Defendants cashed these

checks instead of putting the funds toward the mortgage on the property.[2]  (Gov't Exs. 1 & 2.)

---

[1] Cynthia Underwood testified on May 20, 2009, that Darrell Underwood "usually" checks the Underwoods' post office box in Midlothian, Virginia, at which they receive personal mail and mail associated with their three prior businesses, as well as Walkwood Properties correspondence. It is clear from her testimony that Darrell Underwood picked up mail, including Walkwood Properties rent payments, while he was on this Court's bond. (*See also* May 6, 2009 Hr'g Tr. 133:16-19, 134:10-13.)

[2] It is not clear from the record who cashed these particular checks, but Cynthia Underwood's May 20, 2009 testimony made clear that Darrell Underwood continued to cash checks for the business beyond December 18, 2008. After the Defendants' bank accounts were frozen, the Defendants utilized Darrell's check-cashing account at Styles Bi-Rite. Cynthia Underwood testified that Darrell Underwood cashed checks for the business because he was able to do so at a better rate than she. In his post-hearing brief, Darrell Underwood conceded the violation, defending it as "a matter of convenience if not necessity for Mrs. Underwood's management of Walkwood's rental income." (Def. Darrell Underwood's Resp. to Gov't's Mot. to Revoke Bond and Amend Conditions of Release 4.) (Docket No. 35.)

Defendants have not made a mortgage payment on the property since December 1, 2008.  (May 6, 2009 Hr'g Tr. 112:17-19.)

### B.    2410 Parkview Avenue, Petersburg, Virginia

L.P. and L.P. rent 2410 Parkview Avenue from Walkwood Properties[3] for $1300 per month.  L.P. and L.P. run a group home for mentally challenged adults at this address.  (May 6, 2009 Hr'g Tr. 47:15-18.)  Darrell Underwood clearly has had involvement with Walkwood Properties' management of this property as well.  Cynthia Underwood testified that Darrell Underwood, on several occasions, picked up rental payments on this property.  Each of these occasions constitutes a violation of his bond.

L.P. and L.P. made cash rental payments in January, February, and March 2009.  In January 2009, L.P. made a cash payment to Cynthia Underwood.  L.P. paid Darrell Underwood directly in February and March 2009 (February at a Wawa in Colonial Heights, March at her home).  L.P. and L.P. had an employee, J.O., take cash payment to Darrell Underwood on their behalf for April rent.  Government Exhibit 6 is a receipt dated April 16, 2009, showing that L.P. and L.P. made a rent payment.  The parties stipulated that Darrell Underwood wrote out the receipt.  (May 6, 2009 Hr'g Tr. 57:24-58:4.)  However, this cash payment was not entered into Cynthia Underwood's ledger showing payments and expenditures.

2410 Parkview Avenue is facing foreclosure, as the mortgage payments are delinquent.  Documents sent by EMC Mortgage Corporation show that the property is delinquent by almost $8000, and the last payment was made in December 2008, bringing the loan current through

---

[3] Darrell Underwood individually, rather than Walkwood Properties, holds title to 2410 Parkview Avenue.  (Def. Ex. 5.)

5

November 2008. (Gov't Ex. 7.) L.P. and L.P. apparently were unaware of the impending foreclosure on the property.

**C.      4037 Simons Drive, Richmond, Virginia**

Darrell Underwood holds title to the property at 4037 Simons Drive, Richmond, Virginia. P.L. and D.L. rent this property for $1000 per month, after entering into an agreement to sell to Darrell Underwood their property at 9628 Riddle Road, Chesterfield, Virginia, with an option to purchase it back, in late 2008.[4] P.L. and D.L. believed they had sold their home to Darrell Underwood, but later found out that was not true when, in February 2009, they received a Notice of Default on the Riddle Road property indicating the mortgage, still in their names, was delinquent by $3766.98. (Gov't Ex. 11.)

A September 29, 2008 Deed of Assumption shows that Kingdom Investments, LLC[5] assumed liability for P.L. and D.L.'s mortgage on the Riddle Road property. (Gov't Ex. 15.) Cynthia Underwood testified at the May 20, 2009 hearing that she understood that P.L. and D.L. had entered into this contract with Kingdom Investments (through its agent, Darrell Underwood) with the expectation that the Underwoods, through Kingdom Investments, would pay that mortgage. However, no payments were made on the Riddle Road property from December 2008 through February 2009.

---

[4] P.L. and D.L. were facing foreclosure on this property, and as part of the deal with Darrell Underwood, Mr. Underwood's company paid a reinstatement to make the mortgage current. (May 6, 2009 Hr'g Tr. 69:9-18.)

[5] Kingdom Investments, LLC is a company associated with Darrell and Cynthia Underwood. Special Agent Urheim, who testified on behalf of the Government at the May 6, 2009 hearing, testified that P.L. and D.L. knew Mr. Underwood's company as Kingdom Investments, and when making rent payments, they did so on at least one occasion at the offices of Walkwood Properties. (May 6, 2009 Hr'g Tr. 63:6-20.)

P.L. and D.L. made rental payments to Kingdom Investments for the Simons Drive property for November and December 2008. (Gov't Ex. 8.) In March 2009, the Defendants instituted an unlawful detainer action against P.L. and D.L. for failure to pay February rent. When P.L. and D.L. did not attend the court hearing, a writ of eviction issued. Cynthia Underwood went to the Simons Drive home on or about March 9, 2009. Ms. Underwood testified that during that meeting, she told P.L. and D.L. that they "have to make payment because I have a mortgage on the property." (May 6, 2009 Hr'g Tr. 127: 18-21.) P.L. and D.L. paid Cynthia Underwood their February 2009 rent and Cynthia Underwood called off the eviction. The following day, Cynthia Underwood provided P.L. and D.L. a "Tenant Ledger" showing payments received and rents due. P.L. and D.L. were disturbed to see that a cash payment made by P.L. in January did not appear on the ledger. (Gov't Ex. 9; May 6, 2009 Hr'g Tr. 64:8-13.) At no time did Ms. Underwood tell P.L. or D.L. that she had not applied any of their payments to the property in which they lived.

The Simons Drive property is facing foreclosure. The loan is delinquent from October 2008 to May 2009, by $6,732.02. (Gov't Ex. 10.) No payments have been made since November 2008. P.L. and D.L. became aware of the impending foreclosure when a Washington Mutual representative came to the Simons Drive property asking for Darrell Underwood, left a message for Darrell Underwood to call Washington Mutual Home Loans, and advised the tenants' son that the home was falling into foreclosure. (Gov't Ex. 12; May 6, 2009 Hr'g Tr. 66:5-20.)

**D.      Renovations and Repairs to 13020 Singer Road, Chesterfield, Virginia**

Defendants currently live at 13020 Singer Road, Chesterfield, Virginia. They downsized from a home on Pungo Court in Chesterfield, Virginia, after Darrell Underwood was indicted. A February 2, 2009 "Consent Order Partially Amending Pretrial Restraining Order" authorized Defendants to take this action. (Docket No. 14.) The United States now represents that Defendants "spent at least $3,500 for painting and tile work performed on the property without the court's approval and in direct violation of the Restraining Order." (Mot. Revoke Bond 8-9.) (Docket No. 28.)

Special Agent Michael Gracia of the Secret Service testified on May 6, 2009, that he had interviewed Joaquin Rosales, an employee of Floor Trader, regarding work he performed at the Underwoods' Singer Road residence in January 2009. The ledger prepared by Cynthia Underwood reflects a payment of $1,203.93 to "Floor Trader" on January 28, 2009. (Gov't Ex. 1 & 1B.) Additionally, Mr. Rosales received cash payments for "Rehab Svcs" in the amount of $500 on February 2, 2009, and $2,000 on February 7, 2009. (Gov't Ex. 1; May 6, 2009 Hr'g Tr. 85:5-8.) Mr. Rosales indicated to Special Agent Gracia that he had been paid in cash by both Cynthia and Darrell Underwood for paint work and tile laying. (May 6, 2009 Hr'g Tr. 84:14-23.)

Cynthia Underwood testified that the Singer Road property was damaged after a tenant moved out in January 2009. A hole in the bathtub caused water to run through a light fixture below it, and other lights did not work properly. She stated that the twenty-year-old carpet needed to be replaced, because it "was dirty, kinda stinky. It was worn." (May 6, 2009 Hr'g Tr. 104:1-2.) Therefore, the Defendants had new low-grade carpet installed at the property. The Defendants also painted the residence and installed new tile, allegedly to repair structural and water damage, "to an extent." (May 6, 2009 Hr'g Tr. 104:22-105:2.) Cynthia Underwood gave

8

testimony indicating that the repairs were necessary in order to make the property livable and

safe for [her] family. In seeming contradiction, however, Ms. Underwood also testified during

the May 20, 2009 hearing that, rather than applying the $1500.00 security deposit on Singer Road

to the repairs, she returned the deposit to its previous tenant, G.M., on February 18, 2009. (Gov't

Ex. 19.)

The Restraining Orders in place do not contemplate Defendants making renovations or

repairs to their personal residence. The December 18, 2008 Restraining Order enjoined and

restrained Darrell Underwood from disposing of any currency. (Dec. 18, 2008 Restraining Order

1-2.) This includes spending money on Defendants' personal residence.

## IV. Analysis

### A. Darrell Underwood

The Bail Reform Act permits a judicial officer to order detention of a person when

evidence at a hearing indicates by clear and convincing evidence that no condition or

combination of conditions will reasonably assure the appearance of the person as required and

the safety of any other person and the community. 18 U.S.C. § 3142(e),(f)(2)(B). As a sanction

for violation of a release condition, "a judicial officer shall enter an order of revocation and

detention if, after a hearing, the judicial officer–

> (1) finds that there is--
>> (A) probable cause to believe that the person has committed a Federal, State, or
>> local crime while on release; or
>> (B) clear and convincing evidence that the person has violated any other condition
>> of release; and
> (2) finds that--
>> (A) based on the factors set forth in section 3142(g) of this title, there is no
>> condition or combination of conditions of release that will assure that the person

> will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

The evidence introduced during the hearing held on May 6 and 20, 2009, overwhelmingly indicated persistent and continuing bond violations by Darrell Underwood, with little hint of remorse on either Defendant's part.[6]  Cynthia Underwood testified on May 20, 2009, that while she understood that she was charged with running Walkwood Properties because Darrell Underwood was not to have any involvement with the business under the terms of the bond, Darrell Underwood's involvement continued despite the terms of his bond.

Although counsel for Darrell Underwood seeks to portray these violations as isolated and borne of necessity, the record overwhelmingly shows otherwise.  The record plainly shows that Darrell Underwood utterly disregarded this Court's order to refrain from conducting Walkwood Properties business.  Moreover, to the extent any such business necessity induced such conduct, nothing prevented Mr. Underwood for petitioning the Court for a modification of the terms of the bond to respond to such a dire need.  Instead, the conduct remain hidden from any supervising official until exposed by the Government.  The Court therefore finds by clear and convincing evidence that Darrell Underwood has violated the conditions of his bond, and is unlikely to abide by any condition or combination of conditions of release.   Darrell Underwood's bond will be

---

[6] The Pretrial Services Office has informed the Court of three separate violations of Darrell Underwood's conditions of release, with no action taken.  Two involved missed drug tests.  The Pretrial Services Officer reported that Darrell Underwood missed a third test on May 15, 2009 – *during the pendency of this bond revocation motion.*

REVOKED. Darrell Underwood will be REMANDED to the custody of the United States Marshal.

**B.    Cynthia Underwood**

A "judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). This Court allowed Cynthia Underwood to remain on bond and to run Walkwood Properties for the purpose of minimizing risk of foreclosure to tenants in properties managed by the Underwoods. Based on the discussion above, clear and convincing evidence exists that Cynthia Underwood violated her conditions of release as well. She improperly repaired her own home while allowing others to go into foreclosure, she allowed her husband to assist in managing Walkwood Properties in violation of his release conditions, and she improperly handled the accounts for Walkwood Properties while in charge of them.

Despite the obvious concept that rental payments should be put toward the mortgage on the same property, Cynthia Underwood testified that she tried to give priority to mortgages subject to a deed of assumption as a manner of running the business in the manner she thought appropriate. (May 6, 2009 Hr'g Tr. 98:3-10.)[7] Cynthia Underwood claims she was never told how to spend rental money, just that she was supposed to run Walkwood Properties, and that she did that to the best of her ability. (May 6, 2009 Hr'g Tr. 122:13-17.) She testified that while she did understand that rental payments were to be put toward mortgage payments (May 6, 2009 Hr'g

---

[7] The properties subject to a deed of assumption, wherein the original owner retains title but Walkwood Properties assumed liability for the mortgage, include 622 Mount Columbia Road and 9628 Riddle Road. Cynthia Underwood stated that she focused on deed of assumption loans because those loans are in the individual's names, and so nonpayment of the mortgage would adversely affect that individual's credit. (May 6, 2009 Hr'g Tr. 98:3-10.)

Tr. 125:7-8), no one told her the payments had to be applied to the mortgage on the property for which rent was received.[8]  Thus, she testified on May 20, 2009, "Money coming into Walkwood Properties goes where I feel it needs to go" because everyone knew that debt for the company exceeded income.  She also asserted that "it was not made clear that I was supposed to pay commercial lenders."  Cynthia Underwood did not explain why she need not tell the tenants living at each property how their money was applied, nor did she explain why she did not, through counsel, seek clarification of the terms of her bond.

The evidence indicates that 622 Mount Columbia Road was $5,806.70 in default as of April 14, 2009. (Gov't Ex. 3.) Cynthia Underwood testified that no mortgage payments have been made since December 1, 2008. As to 2410 Parkview Avenue, the evidence showed that no mortgage payments have been made since December 4, 2008. (Gov't Ex. 7.) The December payment brought the loan current only through November 2008, and the loan is now delinquent by almost $8,000. (May 6, 2009 Hr'g Tr. 55:1-2.) The Simons Drive property is also facing foreclosure. The last mortgage payment was received in November 2008, and the loan is in

---

[8] Defense counsel's argument at the beginning of the May 20, 2009 hearing suggested that the Defendants believed that the properties managed by Walkwood Properties and/or owned by the Underwoods continue to be protected by the December 18, 2009 Restraining Order, because the April 24, 2009 Amended Restraining Order does not explicitly release the properties. The Court declines to adopt this interpretation of the Amended Restraining Order, which conspicuously omits "real property" from the property subject to the restraining order. (Docket No. 27.) Moreover, the suggestion that Cynthia Underwood believed she did not have to concern herself with effectively managing the properties because the properties were protected by court order stands in direct conflict to Cynthia Underwood's May 20, 2009 testimony that she did not believe the properties were in danger of foreclosure because Darrell Underwood had "made arrangements" with commercial lenders to avoid foreclosure (in direct violation of his bond). Cynthia Underwood could not articulate the terms arranged by Darrell Underwood. This also conflicts with her expressed concern about foreclosure via the individual investors she chose to repay in 2009. (Gov't Ex. 19.)

12

default by $6,732.02. (Gov't Ex. 10.)  Moreover, the Defendants failed to notify the tenants of these properties of the impending foreclosures, in violation of the April 24, 2009 Amended Restraining Order.  The evidence showed that tenants have made several rental payments on each property since November 2008 that should have been applied to the mortgages.  Although a ledger prepared by Cynthia Underwood shows that, because some of Walkwood's properties are vacant, mortgage payments on the properties exceed the rents received, the evidence at the hearing also showed that a lienholder on nineteen properties of thirty-four Walkwood-managed properties, James Hill, has foregone mortgage payments on those nineteen properties for the time being so that other properties would not go into foreclosure. (Def.'s Ex. 5; May 6, 2009 Hr'g Tr. 125:13-18, 126:4-10.)

The April 23, 2009 Order Setting Conditions of Release makes clear that Cynthia Underwood was supposed to "maintain any income from rental properties or other source separate and apart and advise her attorney of such payments," yet certain payments, such as P.L. and D.L.'s 2009 rent payment, are absent from the ledgers she prepared for the United States and for the Simons Drive tenants. (Gov't Exs. 1, 9.)  Therefore, Amended Conditions of Release requiring Cynthia Underwood to advise Pretrial Services as well as her attorney before spending any rental income are appropriate.

The evidence also showed that Cynthia Underwood understood the conditions of release imposed upon Darrell Underwood that he have no involvement with the operation of Walkwood Properties, and also that she was aware that Darrell Underwood was nevertheless involved in the operation of Walkwood Properties. (May 6, 2009 Hr'g Tr. 131:14-23.)  The record here indicates a willingness on Cynthia Underwood's part to watch Darrell Underwood violate his

13

bond prior to her own bond hearing on April 23, 2009, and afterward. This warrants amended conditions of release, including home detention and electronic monitoring, because the Court finds it unlikely that Cynthia Underwood will comply with existing conditions otherwise.

The same considerations dictating Cynthia Underwood's original conditions of release remain relevant at this stage in the proceedings. However, the bond conditions must be amended to make clear that any rental payments from Walkwood-managed properties must go to lienholders on the property whose tenant tenders payment, and not to the Underwoods, the operation of Walkwood Properties, or a different lienholder. This serves the ends of protecting lienholders, and preventing foreclosure and displacement of tenants.

The expenditures on the Singer Road property demonstrate why this Court must amend Cynthia Underwood's conditions of release to clarify the impropriety of spending money on the Underwoods' personal residence when rent-paying tenants' residences are going into foreclosure.

Thus, the Court will GRANT the Government's motion to amend Cynthia Underwood's conditions of release. She will be placed on home detention with electronic monitoring and permitted to conduct the business of Walkwood Properties insofar as it involves making mortgage payments and collecting rents due for the purpose of making mortgage payments. She will be RESTRAINED from spending any money on maintaining, repairing, or renovating the Underwoods' personal residence on Singer Road. She will be REQUIRED to maintain a ledger showing, specifically for each property discussed herein, rental payments, mortgage payments, mortgage bills, rental delinquencies, and mortgage delinquencies. The ledger shall reflect from whom payment was received, and the concomitant payment to the lender who holds a mortgage on the property pertaining to the tenant or payee tendering payment. She will assure that all

payments from tenants will be applied to the property in which the tenant has an interest.

Counsel for Cynthia Underwood is DIRECTED to obtain from the United States Attorney's

Office the prioritization of payments otherwise received.

      An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 5/22/09

15